**CONSOLE LAW OFFICES LLC**
Stephen G. Console
James M. Duttera
110 Marter Ave., Suite 105
Moorestown, NJ 08057
(856) 854-4000
(856) 854-4006 (fax)
console@consolelaw.com
duttera@consolelaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| Mohammed Al-Farook; Charles Arce, Jr. Darris DiCriscio; Gerald Florio; Mary Patricia Fox; Thomas Garay; Maria Jones; James Kennedy; Antonio Mancella; John McInally; Tom Miller; Anthony Morano; Kim Perkins; Maria Piechowski; Michael Pagnani; Dominick Raimond; Hank Reyes; Ron Rodriguez; Chris Rothstein; Maureen Scheffler; David Syroczynski; Daniel Walling Jr. | : : : : : : : : : : : : | |
| **Plaintiffs,** | : : | **CIVIL ACTION NO.** |
| **v.** | : : | |
| Marina District Development Company, LLC,: | : | **JURY TRIAL DEMANDED** |
| **Defendant.** | : : : | |

## <u>COMPLAINT</u>

I.     <u>PRELIMINARY STATEMENT</u>

Plaintiffs, Mohammed Al-Farook; Charles Arce, Jr.; Darris DiCriscio; Gerald

Florio; Mary Patricia Fox; Thomas Garay; Maria Jones; James Kennedy; Antonio

Mancella; John McInally; Tom Miller; Anthony Morano; Kim Perkins; Maria Piechowski;

Michael Pagnani; Dominick Raimond; Hank Reyes; Ron Rodriguez; Chris Rothstein;

Maureen Scheffler; David Syroczynski; Daniel Walling Jr., bring this action against their former employer, Defendant, Marina District Development Company, LLC, d/b/a Borgata Hotel Casino & Spa ("Borgata").

Plaintiffs were all "day one" employees, working at Borgata from its opening in May, 2003 until their wrongful terminations in May, 2011. Each had worked continuously in Borgata's table games department for approximately eight years and each was over forty (40) years of age.

In May, 2011, as part of an alleged reduction in force, Borgata selected each plaintiff for termination because of their age. The Borgata then further violated federal law by obtaining from each plaintiff (and other, older terminated individuals) a waiver of age discrimination claims that failed to comply with the requirements of the Age Discrimination in Employment Act. The Borgata specifically and falsely advised each plaintiff that each was giving up his or her right to bring a claim of age discrimination under federal law.

Plaintiffs bring suit to remedy Defendants' violations of the Age Discrimination in Employment Act ("ADEA"), as amended, by the Older Workers Benefits Protection Act, 29 U.S.C. § 621, *et seq.*. Plaintiffs bring this action together, on behalf of themselves, pursuant to the ADEA, 29 U.S.C. § 626(b), incorporating section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), and pursuant to Rule 20 of the Federal Rules of Civil Procedure. Plaintiffs also seek relief under the Declaratory Judgments Act, respectfully requesting the Court issue an order declaring the separation agreements that they signed to be invalid as to claims under the ADEA.

Each Plaintiff seeks damages, including compensatory, liquidated, and all other relief under federal laws prohibiting age discrimination in employment and as this Court deems appropriate.

## II.  **PARTIES**

1.  Plaintiff Mohammed Al-Farook is an individual and citizen of the state of New Jersey, residing therein in Galloway, NJ 08205.

2.  Plaintiff Al-Farook was born in January, 1964, and is currently forty-eight (48) years of age.

3.  Plaintiff Charles Arce, Jr. is an individual and citizen of the state of New Jersey, residing therein in Galloway, NJ 08205.

4.  Plaintiff Arce was born in January, 1950 and is currently sixty-two (62) years of age.

5.  Plaintiff Darris DiCriscio is an individual and citizen of the state of New Jersey, residing therein in Northfield, NJ 08225.

6.  Plaintiff DiCriscio was born in September, 1958 and is currently fifty-three (53) years of age.

7.  Plaintiff Gerald Florio is an individual and citizen of the state of New Jersey, residing therein in Northfield, NJ 08225.

6.  Plaintiff Florio was born in January, 1959 and is currently fifty-three (53) years of age.

9.  Plaintiff Mary Patricia Fox is an individual and citizen of the state of New Jersey, residing therein in Brigantine, NJ 08203.

10.  Plaintiff Fox was born in January, 1952 and is currently sixty (60) years of

age.

11.     Plaintiff Thomas Garay is an individual and citizen of the state of New Jersey, residing therein in Galloway, NJ 08205.

12.     Plaintiff Garay was born in August, 1961 and is currently fifty-one (51) years of age.

13.     Plaintiff Maria Jones is an individual and citizen of the state of New Jersey, residing therein in Millville, NJ 08332.

14.     Plaintiff Jones was born in November, 1961 and is currently fifty-one (51) years of age.

15.     Plaintiff James Kennedy is an individual and citizen of the state of New Jersey, residing therein in Galloway, NJ 08205.

16.     Plaintiff Kennedy was born in August, 1961 and is currently fifty-one (51) years of age.

17.     Plaintiff Antonio Mancella is an individual and citizen of the state of New Jersey, residing therein in Mays Landing, NJ 08330.

18.     Plaintiff Mancella was born in November, 1965 and is currently forty-four (44) years of age.

19.     Plaintiff John McInally is an individual and citizen of the state of New Jersey, residing therein in Egg Harbor Township, NJ 08234.

20.     Plaintiff McInally was born in October, 1947 and is currently sixty-four (64) years of age.

21.     Plaintiff Thomas Miller is an individual and citizen of the state of New Jersey, residing therein in Mays Landing, NJ 08330.

22.     Plaintiff Miller was born in August, 1965 and is currently forty-six (46) years of age.

23.     Plaintiff Anthony Morano is an individual and citizen of the state of New Jersey, residing therein in Galloway, NJ 08205.

24.     Plaintiff Morano was born in May, 1947 and is currently sixty-five (65) years of age.

25.     Plaintiff Kim Perkins is an individual and citizen of the state of New Jersey, residing therein in Galloway, NJ 08205.

26.     Plaintiff Perkins was born in May, 1956 and is currently fifty-six (56) years of age.

27.     Plaintiff Maria Piechowski is an individual and citizen of the state of New Jersey, residing therein in Mays Landing, NJ 08330.

28.     Plaintiff Piechowski was born in May, 1961 and is currently fifty-one (51) years of age.

29.     Plaintiff Michael Pagnani is an individual and citizen of the state of New Jersey, residing therein in Galloway, NJ 08205.

30.     Plaintiff Pagnani was born in June, 1956 and is currently fifty-six (56) years of age.

31.     Plaintiff Dominick Raimond is an individual and citizen of the state of New Jersey, residing therein in Linwood, NJ 08221.

32.     Plaintiff Raimond was born in December, 1959 and is currently fifty-two (52) years of age.

33. Plaintiff Hank Reyes is an individual and citizen of the state of New Jersey, residing therein in Galloway, NJ 08205.

34. Plaintiff Reyes was born in May, 1951 and is currently sixty-one (61) years of age.

35. Plaintiff Ron Rodriguez is an individual and citizen of the state of New Jersey, residing therein in Egg Harbor Township, NJ 08234.

36. Plaintiff Rodriguez was born in March, 1957 and is currently fifty-five (55) years of age.

37. Plaintiff Chris Rothstein is an individual and citizen of the state of New Jersey, residing therein in Ventnor, NJ 08406.

38. Plaintiff Rothstein was born in April, 1962 and is currently fifty (50) years of age.

39. Plaintiff Maureen Scheffler is an individual and citizen of the state of New Jersey, residing therein in Atco, NJ 08004.

40. Plaintiff Scheffler was born in August, 1952 and is currently fifty-nine (59) years of age.

41. Plaintiff David Syroczynski is an individual and citizen of the state of New Jersey, residing therein in Galloway, NJ 08205.

42. Plaintiff Syroczynski was born in December, 1953 and is currently fifty-eight (58) years of age.

43. Plaintiff Daniel Walling Jr. is an individual and citizen of the state of New Jersey, residing therein in Galloway, NJ 08205.

44. Plaintiff Walling Jr. was born in June, 1957 and is currently fifty-five (55)

years of age.

45.     Defendant Marina District Development Company, LLC, d/b/a Borgata Hotel Casino & Spa ("Defendant" or "Borgata") is a New Jersey limited liability company with corporate headquarters and/or a principal place of business located at 1133 Boardwalk, Atlantic City, NJ 08401.

46.     Defendant is engaged in an industry affecting interstate commerce and, at all relevant times, has regularly conducted business in the state of New Jersey as the Borgata Hotel Casino and Spa.

47.     At all times material hereto, Defendant has acted as an "employer" within the meaning of the ADEA that are the subject of this suit.

48.     At all times material hereto, Defendants employed more than twenty (20) people.

49.     At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen and/or employees within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

50.     At all times material hereto, Plaintiffs were employees of Defendant within the meaning of the ADEA.

## III.    JURISDICTION AND VENUE

51.     The causes of action set forth in this Complaint arise under the ADEA, as amended, 29 U.S.C. § 621, *et seq.*, and the Declaratory Judgments Act, 28 USC 2201.

52.     The District Court has jurisdiction over Count I pursuant to 28 U.S.C. § 1331.

53.     The District Court has jurisdiction over Count II pursuant to 29 U.S.C. §

626(c) and 28 U.S.C. § 1331.

54.     Venue is proper under 28 U.S.C. § 1391(b).

55.     On or about September 6, 2011, Plaintiffs filed charges of discrimination ("Charges") with the Equal Employment Opportunity Commission ("EEOC").  Attached hereto, incorporated herein and marked as Exhibits A-V, respectively, are true and correct copies of the charges (with minor redactions for purposes of electronic filing of confidential/identifying information) filed by Plaintiffs Al-Farook (Exhibit A), Arce (Exhibit B), DiCriscio (Exhibit C), Florio (Exhibit D), Fox (Exhibit E), Garay (Exhibit F), Jones (Exhibit G), Kennedy (Exhibit H), Mancella (Exhibit I), McInally (Exhibit J), Miller (Exhibit K), Morano (Exhibit L), Perkins (Exhibit M), Piechowski (Exhibit N), Pagnani (Exhibit O), Raimond (Exhibit P), Reyes (Exhibit Q), Rodriguez (Exhibit R), Rothstein (Exhibit S), Scheffler (Exhibit T), Syroczynski (Exhibit U), and Walling (Exhibit V). Also within each exhibit are true and correct copies of Notices of Right to Sue issued to Plaintiffs by the EEOC on or about October,19, 2012.

56.     More than sixty (60) days have elapsed since Plaintiffs' filed their Charges with the EEOC.

57.     Plaintiffs have fully complied with all administrative prerequisites for the commencement of this action.

## IV.    FACTUAL ALLEGATIONS

58.     Borgata opened to the public in or about July, 2003.

59.     Each Plaintiff was hired by Defendant at or before its opening, and worked continuously for Defendant for almost eight (8) years until all were terminated on or about May 9, 2011.

60.     Each Plaintiff was a well-qualified employee who had performed his or her job duties in a fully satisfactory manner throughout many years of service.

61.     Notwithstanding their qualifications for many positions within the Borgata and their history of outstanding performance and years of loyal service, Plaintiffs were involuntarily terminated as part of a mass termination May, 2011.

62.     Each Plaintiff worked in a supervisory position in Defendant's Table Games department.

63.     Within Defendant's Table Games department, a large number of Dealers are scheduled to work on the casino floor at a given time.  The Dealers are supervised by Floorpersons and the Floorpersons are supervised by Pit Managers.  Pit Managers are supervised by a Shift Manager, who is the highest-ranking person on the casino floor at a given time.

64.     As of May 9, 2011, the head of the Table Games department was Chris Ford, Vice President.

65.     Plaintiffs Florio, McInally, Morano, and Rodriguez held the position of Pit Manager at the time of their termination.

66.     As Pit Boss, Plaintiffs Florio, McInally, Morano, and Rodriguez had responsibility for training personnel, monitoring and reporting all high limit pay, and supervising the casino floor personnel.

67.     Plaintiffs Florio, McInally, Morano, and Rodriguez each performed his job duties as Pit Manager in a fully satisfactory manner, and received raises and positive reviews throughout his career as well as high praise from his supervisors.

68.     Plaintiff Florio was qualified for the position of Pit Manager.

69.     Plaintiff Florio was also qualified for the positions reporting to Pit Manager, including Dealer and Floorperson.

70.     Plaintiff McInally was qualified for the position of Pit Manager.

71.     Plaintiff McInally was also qualified for the positions reporting to Pit Manager, including Dealer and Floorperson.

72.     Plaintiff Morano was qualified for the position of Pit Manager.

73.     Plaintiff Morano was also qualified for the positions reporting to Pit Manager, including Dealer and Floorperson.

74.     Plaintiff Rodriquez was qualified for the position of Pit Manager.

75.     Plaintiff Rodriguez was also qualified for the positions reporting to Pit Manager, including Dealer and Floorperson.

76.     Plaintiffs Al-Farook, Arce, DiCriscio, Fox, Garay, Jones, Kennedy, Mancella, Miller, Perkins, Piechowski, Pagnani, Raimond, Reyes, Rothstein, Scheffler, Syroczynski, and Walling held the position of Associate Pit Manager at the time of their termination.

77.     As Associate Pit Bosses, Plaintiffs Al-Farook, Arce, DiCriscio, Fox, Garay, Jones, Kennedy, Mancella, Miller, Perkins, Piechowski, Pagnani, Raimond, Reyes, Rothstein, Scheffler, Syroczynski, and Walling performed the duties of a Pit Boss during some shifts and the duties of a Floorperson during other shifts; that is, each worked some days as a Floorperson and some days as a Pit Boss.

78.     When working as a Floorperson, Plaintiffs Al-Farook, Arce, DiCriscio, Fox, Garay, Jones, Kennedy, Mancella, Miller, Perkins, Piechowski, Pagnani, Raimond, Reyes, Rothstein, Scheffler, Syroczynski, and Walling were responsible for supervising

all types of table games.  As a Pit Manager, each was responsible for training personnel, monitoring and reporting all high limit pay, and supervising the casino floor personnel.

79.     Plaintiffs Al-Farook, Arce, DiCriscio, Fox, Garay, Jones, Kennedy, Mancella, Miller, Perkins, Piechowski, Pagnani, Raimond, Reyes, Rothstein, Scheffler, Syroczynski, and Walling each performed his or her job duties as Associate Pit Manager in a fully satisfactory manner, and received raises and positive reviews throughout his or her career as well as high praise from his or her supervisors.

80.     Plaintiff Al-Farook was qualified for the position of Associate Pit Manager.

81.     Plaintiff Al-Farook was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

82.     Plaintiff Arce was qualified for the position of Associate Pit Manager.

83.     Plaintiff Arce was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

84.     Plaintiff DiCriscio was qualified for the position of Associate Pit Manager.

85.     Plaintiff DicRiscio was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

86.     Plaintiff Fox was qualified for the position of Associate Pit Manager.

87.     Plaintiff Fox was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

88.     Plaintiff Garay was qualified for the position of Associate Pit Manager.

89.     Plaintiff Garay was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

90.    Plaintiff Jones was qualified for the position of Associate Pit Manager.

91.    Plaintiff Jones was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

92.    Plaintiff Kennedy was qualified for the position of Associate Pit Manager.

93.    Plaintiff Kennedy was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

94.    Plaintiff Mancella was qualified for the position of Associate Pit Manager.

95.    Plaintiff Mancella was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

96.    Plaintiff Miller was qualified for the position of Associate Pit Manager.

97.    Plaintiff Miller was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

98.    Plaintiff Perkins was qualified for the position of Associate Pit Manager.

99.    Plaintiff Perkins was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

100.    Plaintiff Piechowski was qualified for the position of Associate Pit Manager.

101.    Plaintiff Piechowski was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

102.    Plaintiff Pagnani was qualified for the position of Associate Pit Manager.

103.    Plaintiff Pagnani was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

104.    Plaintiff Raimond was qualified for the position of Associate Pit Manager.

105.    Plaintiff Raimond was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

106.    Plaintiff Reyes was qualified for the position of Associate Pit Manager.

107.    Plaintiff Reyes was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

108.    Plaintiff Rothstein was qualified for the position of Associate Pit Manager.

109.    Plaintiff Rothstein was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

110.    Plaintiff Scheffler was qualified for the position of Associate Pit Manager.

111.    Plaintiff Scheffler was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

112.    Plaintiff Syroczynski was qualified for the position of Associate Pit Manager.

113.    Plaintiff Syroczynski was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

114.    Plaintiff Walling was qualified for the position of Associate Pit Manager.

115.    Plaintiff Walling was also qualified for the individual positions of Pit Boss and Floorperson, as well as the Dealer position.

116.    On or about May 9, 2009, each Plaintiff was notified that they were being terminated, effective immediately.

117.    In all, approximately forty individuals from the Table Games department were terminated on or about May 9, 2011 ("Layoffs").

118. While Defendant terminated Plaintiffs, it retained substantially younger employees to perform the duties that had previously been performed by Pit Managers and Associate Pit Managers.

119. Upon information and belief, in the months leading up to and following the terminations of Plaintiffs, Defendant promoted and/or or assigned substantially younger Table Games employees to perform duties that Plaintiffs were qualified to perform, including Dealer duties, Floorperson duties, and Pit Manager duties.

120. Plaintiffs were told that they were selected for termination based on scores of their evaluations.

121. The reason for Plaintiffs' terminations (*i.e.*, selection based on evaluations) is a pretext.

122. Plaintiffs were terminated because of their age, as evidenced by, without limitation:

   a. Plaintiffs were each more experienced and better qualified than substantially younger individuals who were retained to perform duties that Plaintiffs had performed or could have performed;

   b. Plaintiffs were each more experienced and better qualified than substantially younger individuals who had been promoted or hired to perform duties that Plaintiffs had performed or could have performed;

   c. When selecting Plaintiffs for termination, Defendant deviated from its standard procedure for conducting layoffs;

        d.     if Defendant used the numerical ratings noted on Plaintiffs' performance evaluations, that assessment was entirely subjective and vulnerable to, and infected with, age discriminatory bias;

        e.     As part of the selection process, Plaintiffs were not compared to all individuals who performed the same or similar duties as them; and

        f.     if Borgata considered performance in the selection process, Plaintiffs' did not warrant termination.

123.   Defendants employed a flawed selection process so as to allow decision-makers to act on their age bias and eliminate older workers.  To wit, in or about December, 2010, only months before Plaintiffs were terminated, the Executive Vice President of Table Games stated that Borgata used seniority rather than performance evaluations to select people for layoffs because using performance evaluations can lead to claims of discrimination.  Nonetheless, Defendant chose to use evaluations rather than seniority when selected Plaintiffs for termination.

124.   Although many Pit Bosses or Associate Pit Bosses would initially fill out evaluations for employees, only a small, select group of managers would review, change, and finalize all evaluations, allowing them to essentially select which employees would receive the highest scores.

125. The process by which Defendant selected employees for termination as part of the Layoffs was highly susceptible to, and infected with, age-bias.

126.   Upon information and belief, the selections of which employees to terminate were entirely subjective, with managers being granted discretion on deciding whom to terminate.

127.   The process by which Defendant selected employees for termination as part of the Layoffs lacked any safeguards or protections against age bias of the decision-makers.

128.   Upon information and belief (and based in part upon the inference to be drawn by Defendant's failure to provide terminated workers with the comparative data as required by the OWBPA), workers aged forty (40) and older from the Table Games department were terminated at a higher rate as part of the Layoffs than those under the age of forty (40).

129.   The Layoffs had a disparate impact on workers aged forty (40) and over.

130.   Defendant was aware that the selection decisions made as part of the Group Terminations would result, and did result, in a disparate and discriminatory impact on older workers.

131.   Defendant intentionally discriminated, on the basis of age, against the Plaintiffs in connection with the termination decisions and the fraudulent release scheme that it engaged in.

<u>Defendants Provided Fraudulent, False, and Misleading<br>Release Agreements To Older Workers</u>

132.   At the time of their termination, Plaintiffs were each given an "Employee Separation Agreement" ("Release" or "Releases") purporting to release Defendant of all claims, including claims under the ADEA, in exchange for severance payment.

133.   All Plaintiffs were given substantially identical Releases, differing only in names, dates, and amounts of severance.

134.   The amount of severance offered to each Plaintiff was based upon a standard formula.

16

135.   Upon information and belief, all people terminated by Defendant as part of the Layoffs were given substantially identical Releases (differing only in names, dates, amount of severance).

136.   The Releases given by Defendant to the laid-off employees, including the Plaintiffs, fraudulently purported to release Defendant from claims under the ADEA despite Defendant's knowledge that the Releases did not comply with the OWBPA and therefore violated the ADEA.

133.   The Releases given by Defendant to the Plaintiffs and other workers aged forty or older ("Older Workers"), are not valid releases of claims under the ADEA.

134.   Defendant knowingly failed to comply with the OWBPA requirements in presenting releases to the Plaintiffs.

135.   Defendant misled Older Workers, including the Plaintiffs, in an attempt to prevent them from bringing age discrimination claims against Defendant.

136.   Defects rendering the Releases invalid as to claims under the ADEA include, without limitation:

> a.   Defendant did not properly identify the eligibility factors or criteria used to determine which employees would be separated from the company.
>
> b.   Defendant did not properly identify the decisional unit considered for termination.
>
> c.   Defendant failed to provide any information regarding the ages and positions of all individuals retained or terminated as part of the group layoff.

d. Defendant provided only twenty-one (21) days to review and sign the Releases, rather than the forty-five (45) days to review and sign it that are required by the OWBPA to be given in cases of group layoffs.

e. Defendant did not properly identify the decisional unit considered for termination.

f. The Agreements do not advise that the employee may still file a Charge of Discrimination with the EEOC.

137. By way of example of the invalidity of the Releases, the OWBPA requires that employers conducting a group layoff, such as Defendant, provide the titles and ages of the employees retained and laid-off ("Demographic Data").

138. The purpose of the Demographic Data, according to the OWBPA regulations, is to provide employees with enough information regarding layoffs to make an informed choice whether or not to sign a waiver agreement. Defendant withheld this Demographic Data, preventing the Older Workers from making an informed choice whether to sign the Releases.

139. Defendant knew that it was required to give Demographic Data to the Plaintiff, in order to obtain a valid release of claims under the ADEA.

140. Prior to May 9, 2011, Defendant had provided Demographic Data to employees who were let go as part of group layoffs.

141. The fraud committed by Defendant by telling the Older Workers, including Plaintiffs, that they were releasing ADEA claims when they were not releasing and, in fact, retained such claims, **operated only to the detriment of workers aged 40 and**

**over and only misled workers aged 40 and over.** There are no requirements for the form or content of a release being provided to terminated employees under the age of 40. Moreover, workers under the age of 40 are not protected by the ADEA and, therefore, have no claims or potential claims under that statute.

142. A non-fraudulent Release would have stated that the Older Workers and the Named Plaintiffs were releasing Defendant of any and all claims **except for** claims of age discrimination under the Age Discrimination in Employment Act because Defendant had chosen not to provide the information required by the Older Workers Benefits Protection Act.

## COUNT I
## Declaratory Judgments Act

143. Plaintiffs incorporate by reference paragraphs 1 through 142 of this Complaint as if fully set forth herein.

144. Under the OWBPA, the Releases signed by Plaintiffs do not legally prevent Plaintiffs from bringing a claim under the ADEA against Defendant for violation of the ADEA.

145. Plaintiffs are entitled, under the Federal Declaratory Judgments Act, 28 U.S.C. §2201, *et seq.*, to a declaration that the Releases are in violation of the OWBPA and are invalid as to any claims under the ADEA brought by Plaintiffs against Defendant.

146. Plaintiffs are entitled to their costs and attorneys' fees, pursuant to the ADEA.

## COUNT II
## ADEA

147.   Plaintiffs incorporate by reference paragraphs 1 through 146 of this Complaint as if fully set forth herein.

148.   Defendants, by the discriminatory acts set forth herein, have violated the ADEA.

149.   Defendants' violations were intentional and willful under the circumstances and warrant the imposition of liquidated damages.

150.   As a direct and proximate result of Defendants' violation of the ADEA, Plaintiffs have sustained the injuries, damages and losses set forth herein.

151.   Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

### RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs, Mohammed Al-Farook; Charles Arce, Jr.; Darris DiCriscio; Gerald Florio; Mary Patricia Fox; Thomas Garay; Maria Jones; James Kennedy; Antonio Mancella; John McInally; Tom Miller; Anthony Morano; Kim Perkins; Maria Piechowski; Michael Pagnani; Dominick Raimond; Hank Reyes; Ron Rodriguez; Chris Rothstein; Maureen Scheffler; David Syroczynski; and Daniel Walling Jr., and against Defendant, Defendant, Marina District Development Company, LLC, d/b/a Borgata Hotel Casino & Spa:

a.   declaring the "Employment Separation Agreement" to be in violation of the ADEA, as amended by the OWBPA;

b.      declaring the "Employment Separation Agreement" to be void and

unenforceable as to Plaintiffs' claims under the ADEA;

c.      awarding attorneys' fees and costs to Plaintiffs in connection with a

declaration of their rights;

d.      declaring the acts and practices complained of herein to be a violation of

the ADEA;

e.       enjoining and restraining permanently the violations alleged herein;

f.      awarding compensatory damages to Plaintiffs to make Plaintiffs whole for

all past and future lost earnings, benefits and earnings capacity which Plaintiffs have

suffered and will continue to suffer as a result of Defendant's discriminatory and

unlawful conduct;

g.      awarding liquidated damages to Plaintiffs;

h.      awarding Plaintiffs the costs of this action, together with reasonable

attorney's fees;

i.      awarding Plaintiffs such other damages as are appropriate under the

Declaratory Judgments Act and the ADEA; and,

j.      granting such other and further relief as this Court deems appropriate.


                                        **CONSOLE LAW OFFICES LLC**


Dated: January 8, 2013          BY:

                                        Stephen G. Console
                                        James M. Duttera

                                        Attorneys for Plaintiffs